DAVID W. RIZK – CABN # 284376
RIZK & SHEARER LLP
466 Geary Street, Suite 201
San Francisco, CA 94102
Telephone:  (415) 517-9044
Email:  drizk@rs-llp.com

Counsel for Defendant ISAAC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TOMMY ISAAC,<br><br>Defendant. | Case No.: CR 19-31 WHO<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

**I.     INTRODUCTION**

Tommy Isaac will be before the Court for sentencing after he failed to appear for the sentencing hearing in late 2021. As the Court will recall, the failure to appear was the conclusion of a protracted and painful backward slide for Mr. Isaac.

Mr. Isaac failed to appear for sentencing after he relapsed again. Mr. Isaac has struggled with methamphetamine abuse for nearly 20 years, since he was 18 years old; he abused the drug daily between age 23 and 35. After his initial arrest, Mr. Isaac was eventually placed in treatment at New Bridge Foundation. Although Mr. Isaac completed New Bridge's residential program in 2019, he relapsed shortly after completing the program as he transitioned into Pathways Sober Living Environment (SLE). He was returned to New Bridge for an additional 45 days of treatment, which he completed in early 2020. Months later in 2020, the COVID-19 pandemic hit, and although Mr. Isaac

was admitted into the Court's Convictions Alternatives Program (CAP) toward the beginning of the calendar year, he continued to struggle to meet his obligations in CAP and at sober living facilities during the first year of the pandemic. He relapsed a second time in December 2020 and was charged with simple possession (he admitted to smoking methamphetamine to the arresting officer). In an effort to reset again, Mr. Isaac completed the 90-day residential program at Center Point during the first quarter of 2021. However, he continued to miss drug tests and was not fully participating in treatment. A month after leaving Center Point and moving into a SLE, he was terminated for returning late and missing a house meeting, and he had to move to a new SLE facility. Roughly two months later, his situation had not improved, and the Court "flash" incarcerated him for a week at Santa Rita Jail. In August and September 2021, he missed two more drug tests and a treatment session, and he was referred to sentencing.

When Mr. Isaac failed to appear for sentencing in October 2021, he did not flee. Instead, he spent the next two and a half years homeless, living in trailers and on couches, in Hunter's Point. He avoided his family because he was afraid of exposing them to his legal problems since he had absconded. He was unemployed and penniless. In effect, Mr. Isaac hit bottom again—although not exactly as he had when this case was first instituted. At that time, he had also been homeless for about two years, living on the street in San Francisco.

One significant difference: the severity of Mr. Isaac's addiction has abated somewhat, for which he has the Court to thank. Whereas Mr. Isaac was using methamphetamine daily before this case, that destructive habit ended with residential treatment. Although he has relapsed repeatedly, thankfully, he has never fallen back into anything close to daily use and instead is healthier than he was in his twenties. Mr. Isaac is also *alive*, unlike so many crystal meth addicts who have overdosed in the last five years on fentanyl. Thus, while the defense recognizes that Mr. Isaac has not made the strides that were expected or required of him, he is better off now than he was when the case began due to the Court's intervention and his own initiative, however flawed.

Another difference: although Mr. Isaac has been homeless for the last two years, he did not arm himself or commit another serious crime. To his credit, Mr. Isaac did not return to anything like the behavior that cost him the majority of his twenties in state custody on drug and assault charges. His

failure to appear before this Court is his worst offense since the conduct underlying this felon-in-possession case, which occurred in 2018. He had no interactions with law enforcement of any kind from 2021 until he was arrested in June 2024 by SFPD officers on the warrant and in connection with supposed receipt of stolen property, an allegation that was quickly dropped before charges were ever filed. Mr. Isaac thus served three months in the San Francisco County Jail before he was formally transferred to federal custody, and now he has served approximately ten months in custody, all told.

Before he failed to appear, Mr. Isaac planned to ask for a multi-month sentence that would have been the most severe sanction he had received in a decade (since he was 27 years old, in fact). By contrast, a multiyear prison sentence, the defense intended to argue, would itself present a risk to Mr. Isaac's rehabilitation. Recognizing that Mr. Isaac himself interrupted his own recovery, he now respectfully asks the Court for a sentence of 24 months followed by three years of supervised release. Such a sentence adequately reflects his breach of trust and failure to meet his obligations, as well as the reality that he has made progress in his sobriety and abstaining from criminal conduct attendant to drug abuse.

## II.     BACKGROUND

The defense refers the Court to the information regarding Mr. Isaac's background in previous bail and sentencing submissions, which summarize his life experience and the record up to this point. *See* Dkt. Nos. 32, 108. To those submissions, Mr. Isaac wishes to add the following:

Reflecting back on his regimen of substance abuse treatment, he is struck by the losses he suffered along the way. In 2019, while he was in New Bridge, his grandfather passed away. He attended the funeral service not the reception with a counselor. *See* Dkt. Nos. 56-57. The same year he also lost his nephew—his sister's first son, who was only a few years younger than Mr. Isaac, and raised with him—after he was murdered in an encampment in Oakland. PSR ¶ 60. Approximately a year later, he lost a cousin to an early death while he was in the Cherry Hill program in Richmond, CA. *Id.* In residential treatment, he was also shocked and saddened by the loss of three other participants with whom he was close—two overdoses, and a suicide. Since Mr. Isaac was transferred to Santa Rita Jail, he has been seeing a therapist and seeking support for depression. PSR ¶ 67.

### III.     PRESENTENCE REPORT & GUIDELINES

The defense respectfully objects to the PSR's addition to the Guidelines of two offense levels for "obstruction of justice" because he failed to appear. *See* PSR ¶ 22. The defense appreciates that the Commentary to U.S.S.G. § 3C1.1 authorizes the Court to apply the enhancement for "willfully failing to appear, as ordered, for a judicial proceeding." However, the fact that Mr. Isaak's failure to appear coincided with a relapse on methamphetamine, at a minimum, puts his behavior in a different light. Also, significantly, the PSR correctly accords Mr. Isaac credit for acceptance of responsibility pursuant to § 3E1.1, an adjustment that is arguably inconsistent with obstruction of justice under § 3C1.1. Without the two-level increase under § 3C1.1, the Guidelines range for Criminal History Category III is 37-46 months.

The defense also objects to the description of the offense conduct to the extent it alleges that Mr. Isaac threatened a reporting party with a semi-automatic firearm and said, "I'm gonna put a cap in you." PSR ¶ 8. As set forth in the defense's prior bail submissions, the reporting party (1) had a long history of drug use and psychiatric holds, (2) the firearm found by police was a revolver, not a semi-automatic, and (3) when police conducted a cold show of Mr. Isaac to the reporting witness, the witness did not positively identify him and instead said: "That's not him. He had a different jacket on and glasses. The hair was the same but something about his face. He was lighter skinned." *See* Dkt. No. 32 at 6 n.4. Mr. Isaac did not brandish a semi-automatic firearm or threaten anyone, and those unreliable allegations should be struck from the PSR—especially given the likelihood that the Bureau of Prisons (BOP) will rely on them when conducting its PATTERN Risk Assessment tool[1] to characterize the instant offense as "violent," and therefore designate Mr. Isaac to a higher-security prison where fewer programming opportunities are available.

### IV.     ARGUMENT

Courts have an overarching obligation to impose sentences that are sufficient but not greater than necessary to achieve the goals of § 18 U.S.C. § 3553(a). *Kimbrough*, 552 U.S. at 101 (2007). Although they provide a starting point and should be respectfully considered, the Guidelines are not

---

[1] *See* Federal Bureau of Prisons, PATTERN Risk Assessment tool, *available at* https://www.bop.gov/inmates/fsa/pattern.jsp (last accessed April 17, 2025).

DEFENDANT'S SENTENCING MEMORANDUM
*ISAAC*, CR 19–31 WHO

4

mandatory and should not be accorded more weight than the other section 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 50 (2007); *see also United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). Importantly, not only are the guidelines not mandatory, "they are also not to be presumed reasonable." *Nelson v. Arizona*, 555 U.S. 350, 352 (2009) (emphasis added); *see also Rita v. United States*, 551 U.S. 338, 350-51 (2007). Instead, the Court must consider the Guidelines range, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6). In crafting a sentence that is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a), the Court must also consider the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

Several matters warrant the Court's consideration in connection with the § 3553(a) factors and Mr. Isaac's request for a custodial sentence of 24 months followed by three years of supervised release:

*First*, as to the circumstances of the offense and Mr. Isaac's personal history, a sentence of longer than 24 months would be greater than necessary. The circumstances of the offense, though certainly serious, are now nearly six years old. At the time, Mr. Isaac had been abusing methamphetamine on a daily basis for almost two decades, he was homeless, and he explained at the time that he had been afraid for his safety. He was found with a baggie of methamphetamine on his person, of course. As set forth above, he did not threaten anyone. He did not brandish or use the firearm, he is not part of a street gang, and he has not been convicted of a violent crime in nearly fifteen years.

Mr. Isaac's personal circumstances are also highly mitigating and explain why he found himself enmeshed in the criminal justice system before he was an adult. *See* Dkt. No. 32 at 1-4. In summary: Mr. Isaac's mother was addicted to crack cocaine during his childhood, and he was

DEFENDANT'S SENTENCING MEMORANDUM
*ISAAC*, CR 19–31 WHO

removed from his mother's custody as a child. He was forced to move frequently during his childhood between family members, who had substance abuse struggles of their own. He lived with an uncle in Stockton who drank and abused opium, and his own father in Oakland, who also used drugs, disappeared into the streets, and physically abused Mr. Isaac. Later, he lived with his mother in shelters in San Jose and San Francisco. Before high school, he was placed in juvenile hall. While in high school, he lived in Bay View, where he personally witnessed many shootings and lost close friends to violence. He began using substances at age 12, and started using ecstasy at age 16, then cocaine and methamphetamine at age 20. All of Mr. Isaac's criminal conduct throughout his life is a result of his serious substance abuse disorder. In sum, he faced long odds.

The defense acknowledges that Mr. Isaac's performance on pretrial release has been poor, primarily because he has not done well with structured programming, relapsed twice, and then made the particularly bad decision to avoid the Court's sentencing hearing when he relapsed a third time. On the other hand, as noted above, he is considerably better off than he was when he made his initial appearance. And he is better off because the Court granted Mr. Isaac bail and an opportunity to participate in CAP and treatment, even if it ended unsuccessfully with Mr. Isaac relapsing and failing to appear for Court. While Mr. Isaac's failure to honor his obligations of course merits greater punishment than he would have received absent his failure to appear, his case is not deserving of a maximal punishment of the Guideline sentence (or 46 months), as U.S. Probation recommends. A 24-month sentence for an addict who endured considerably trauma throughout his life and then failed to earn a non-custodial sentence due to his addiction and lack of adult adjustment is still a "sufficient sentence" within the meaning of the sentencing statute's command, § 3553(a).

*Second,* just punishment, deterrence, and public safety considerations, the defense respectfully submits that 24 months of custody followed by three years of supervised release is sufficient. A multiyear sentence for a 40-year-old who has already lost years of his life to more serious offenses would be greater punishment than necessary. There is no serious prospect that Ms. Isaac himself would ever return to possessing weapons. He is now 40 years old and his only prior violent conviction was when he was 27 years old. Mr. Isaac has two nearly adult children. As he related to the probation officer, he is saddened by the decisions he made due to their impact on his children and

their children. He is not in a gang or other association that would tend to place him at risk for reoffending. The main issue remains his sobriety, which will require continued treatment. Again, his addiction presents a considerable risk to his own health, but the current record reflects that Mr. Isaac's behavior on pretrial release, although seriously subpar, has not presented any appreciable risk to public safety since he was enrolled in New Bridge almost six years ago. In any case, the term of supervised release will ensure that the Court has ample information about Mr. Isaac's well-being to address any future concerns about public safety.

Of course, the Court must on some level consider how to effect general deterrence for Mr. Isaac's failure to appear. The defense respectfully submits that general deterrence is served by a sentence of 24 months, which is, at bottom, a *much longer* sentence than Mr. Isaac would have otherwise earned had he been able to complete CAP or otherwise succeed on pretrial supervision. Moreover, to the extent that a longer custodial sentence might seem to the Court to promise greater deterrent effect, some of the most recent evidence from the Sentencing Commission reveals that there is no deterrent effect from federal sentences imposed that are less than 60 months; a longer or shorter sentence under that threshold has no statistical impact on the likelihood of recidivism.[2] Accordingly, there is no empirical basis to believe that a longer sentence of, say, 46 months as Probation recommends, would achieve greater deterrent effect than the 24-month sentence that the defense requests.

*Third*, as to educational, vocational, medical, or other correctional treatment, no greater custodial sentence is going to provide Mr. Isaac any benefit. A sentence of longer than 24 months will not afford Mr. Isaac access to any kind of beneficial programming that would otherwise be unavailable; and instead, the longer the sentence, the greater the delay in returning to the unavoidable and ultimate project of rehabilitating Mr. Isaac and solidifying his sobriety on supervised release. In addition, the defense respectfully recommends that the Court impose a three to six-month term at the

---

[2] U.S. Sentencing Commission, *Length of Incarceration and Recidivism*, June 2022 at 4 ("For federal offenders sentenced to 60 months or less incarceration, the Commission did not find any statistically significant differences in recidivism."), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220621_Recidivsm-SentLength.pdf (last accessed Mar. 21, 2024).

DEFENDANT'S SENTENCING MEMORANDUM
*ISAAC*, CR 19–31 WHO

Residential Reentry Center (RRC) as a condition of supervised release because Mr. Isaac will need the structure and does not otherwise have an available residence or alternative release plan in place to transition back into the community. Mr. Isaac recognizes that he will need assistance on supervision with housing and also that he may need outpatient treatment, PSR ¶ 63; since his arrest, Mr. Isaac has now been sober for over ten months. Greater supervision will thus assist Mr. Isaac, but a longer custodial sentence that is greater than 24 months will not.

*Fourth*, and finally, the Court is charged with honoring the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Two years of custody followed three years of supervised release is in line with the results in other "drop out" CAP cases where there is some serious breach of the Cout's trust. Accordingly, the need to avoid disparities does not require a longer sentence.

## V.     CONCLUSION

For all the reasons set forth above, Mr. Isaac respectfully asks the Court to sentence him to 24 months of custody, followed by three years of supervised release.

Dated:    April 21, 2024                         Respectfully submitted,

                                                 _____
                                                 DAVID W. RIZK
                                                 RIZK & SHEARER LLP
                                                 Counsel to Ms. Isaac